UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:01CR385 CAS |
| | ) | |
| WILLIAM CARR, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). A hearing was held on the pretrial motions on November 2, 2007.

**#132--Request and Motion for Disclosure of Expert Testimony**

The Government shall provide notice of its expert testimony as well as reports of its expert witnesses in advance of trial as required by Rule 16, Federal Rules of Criminal Procedure, and Rules 702, 703, and 705, Federal Rules of Evidence. Therefore, the Defendant's motion should be granted.

**#133--Motion of Defendant for Disclosure of Impeaching Information with Memorandum in Support**

Pursuant to this motion, the Government shall provide to the Defendant the following material or information, if any exists, as to any person who it calls as a witness at trial in this case:

1. The prior criminal history of convictions of the witness;

2. Any consideration offered or given to the witness in exchange for his/her testimony and/or cooperation in the investigation of the case;

3. Any statement of the witness which relates to the subject matter about which he/she is to testify (Jencks Act Material).

In addition, the Government is required to provide to the Defendant any other evidence in its possession which is favorable to the Defendant, and which is material to the guilt or innocence of the Defendant, or to punishment. Brady v. Maryland, 373 U.S. 83 (1963). To the extent that the Defendant's motion requests disclosure of such evidence, it should be granted. In all other respects, it should be denied.

**#134--Motion for Notice of Intent to Use and Description of 404(b) Evidence**

The Defendant in this motion requests that he be given notice of any evidence which the Government intends to present at trial of other crimes, wrongs, or acts which would be allegedly admissible at trial pursuant to Rule 404(b), Federal Rules of Evidence. Pursuant to that rule, this evidence is admissible, if at all, for specific purposes stated in the rule. Also stated in the rule is that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial or during trial if the court excuses the pretrial notice on good cause of the general nature of any such evidence it intends to introduce at trial." Rule 404(b), Federal Rules of Evidence.

Therefore, the Defendant having requested this information, the undersigned concludes the Government must provide to the Defendant the general nature of any evidence it intends to attempt to introduce under Rule 404(b), Federal Rules of Evidence.

Therefore, it is hereby ordered that the Government shall immediately provide the Defendant the general nature of the evidence of other crimes, wrongs, or acts which it intends to attempt to introduce at trial.

**#135--Defendant's Motion to Suppress Physical Evidence**

The parties appeared before the undersigned and stated that the only issue submitted to the court was the validity and legality and basis for the search warrant in this matter. Both parties agreed that no testimony need be taken in this matter, and that the application and affidavit for the search warrant could be submitted as the basis for any ruling in this case. Based on this stipulation which was entered into on November 2, 2007, during the "evidentiary hearing" on this matter, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

On or about December 8, 2000, United States Postal Inspector William Witt applied for a warrant to search a United Parcel Service package which purported to be from the Ramada Inn, West Hollywood, on Santa Monica Boulevard in West Hollywood, California. The affidavit attached to that application stated in pertinent part as follows:

Agent Witt and members of his investigative team were knowledgeable in investigating express mail services and companies like Federal Express and United Parcel Service who provided overnight delivery service, and the Inspectors had discovered that overnight delivery services were being used for the transportation of narcotics and the proceeds of sales from narcotics. The narcotics team consisted of five Postal Inspectors, some of whom had been assigned to ferreting out this type of narcotics activity for more than four years. This team had been responsible for intercepting over eight hundred overnight delivery parcels which were found to have contained controlled substances or the proceeds of controlled substances. The experience of that team and their expertise led them to the conclusion that the use of express mail and overnight services such as United Parcel and Federal Express are favored for the shipment of narcotics and money because they are deemed to be

reliable, they can be tracked carefully, and because they are perceived to be less likely subject to detection than other methods of transportation. Their investigations have shown that on prior packages, the packages are usually addressed in handwriting rather than being printed; they either come from fictitious addresses or state they come from business addresses which are either fictitious or which are not traceable to any person from the business, and the company has really not sent packages; they are heavily taped; they come from "source" cities for narcotics, and they are sometimes mailed from commercial mail receiving agencies, such as Mail Boxes, Etc.

In the case now at bar, Witt was present at the United Parcel Service Center in Earth City, Missouri, when he observed the above United Parcel Service package addressed to Loose Ends Barber Shop, 9920 Halls Ferry Road, and bearing the return address of the Ramada, West Hollywood, 8585 Santa Monica Boulevard, West Hollywood, California. Significantly, Witt noticed that the label indicated that the parcel was shipped from Mail Boxes, Etc. in West Hollywood, California, on December 7, 2000. Further, the sender and addressee information was handwritten and the parcel was coming from Los Angeles which is a known "source" city for narcotics. Witt noted that the parcel was mailed from Mail Boxes, Etc., and that based on his analysis, he knows that drug dealers use these types of services in an effort to conceal their true identities and to avoid detection. Witt contacted the Ramada Inn, which in fact was at 8585 Santa Monica Boulevard in West Hollywood, California, and talked to the assistant manager of that hotel. The assistant manager stated that the Ramada Inn hotel had not mailed any packages to St. Louis, Missouri, and had no knowledge or association with the Loose Ends Barber Shop. Further, the return address did not identify any individual staying at the motel who would have mailed the package. Witt stated that, based on his expertise, he knows that narcotics dealers use valid business return addresses when in

4

fact they have no connection with the business. Further, Witt's observation of the package showed that it was a box weighing approximately thirty-two pounds, and that the seams were very heavily taped. Based on Witt's training and experience, he knows that the size and weight of the package would indicate that it could possibly be a narcotics shipment. Witt also noted that the heavy taping of the package is indicative of packages which, in the past, had contained proceeds of narcotics trafficking. Based on all these indicators, Witt placed the package in an area of the United Parcel Service facility known not to have been contaminated by narcotics odor. Further, present that day was a narcotic-trained canine and his detective handler from St. Louis, Missouri. The canine sniffed the package and reacted in a positive manner indicating the presence of narcotics or narcotics odor in the package. Further, attached to the search warrant was an affidavit of the handler outlining the canine's expert credentials. Based on the above, the United States Magistrate Judge issued a warrant to search the above package, and Witt searched the package recovering slightly more than twenty-four pounds of cocaine.

## Conclusions of Law

A. The Search of the Package

Based on the above findings, the undersigned concludes that sufficient probable cause exists to authorize the issuance of a warrant to search the above package. For a search warrant to be valid, it must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities, or fruits of a crime or contraband may be found in the place to be searched. Johnson v. United States,333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967). The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

5

> In dealing with probable cause, . . .however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

Brinegar v. United States, 338 U.S. 160, 175 (1979).

Probable cause is a "fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." See Illinois v. Gates, 462 U.S. 213, 232 (1983). Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Illinois v. Gates, at 232. Probable cause may be based on the totality of the circumstances present. All that need be shown for probable cause to search is that there is a "fair probability" that contraband or evidence of a crime will be found at the premises to be searched. See Illinois v. Gates, supra. Also, affidavits should not be read in a hyper-technical manner. See United States v. Ventresca, 380 U.S. 102 (1965). Further, police may use their experience, special training, and expertise to draw inferences of criminal activity from behavior that is not facially criminal. See Texas v. Brown, 460 U.S. 730, 742-743 (1983).

A case very similar to the one now at bar is the case of United States v. Terriques, 319 F.3d 1051 (8th Cir. 2003). In this case, Postal Inspectors and an express mail clerk intercepted a piece of mail at the Phoenix Express Mail Office. The package was of the size that could be used to ship narcotics, it had handwritten labels, it was heavily taped, it had a return address in a run-down neighborhood, and it was mailed from a post office far away from the return address. Based on the above, the agents removed the package from the mail stream and submitted it to a dog sniff which proved positive for narcotics. Based on this information, the agent obtained a search warrant, opened

the package, and discovered drugs inside the package. In holding that the agent had reasonable suspicion to detain the package and to obtain a search warrant for it, the Court stated as follows:

> In the present case, Popp and Randle possessed a particularized and objective basis for suspecting the package contained contraband. First, the inspectors had the training and experience necessary to allow them to draw " 'inferences and deductions that might well allude an untrained person.' " Johnson, 171 F.3d at 603. . .They knew heavy taping of all seams was a technique used in drug trafficking to mask drug odor. Furthermore, the inspectors had reason to rely on the information provided by Leon. In six years at AMC, Leon intercepted over two hundred packages found to contain contraband. . .The details Leon shared with the inspectors were all indicators of possible drug trafficking: the return address was fictitious; the return address was located in a high crime area; the label listed an individual's name but the address was in a business area; and the package was mailed at a postal facility quite a distance from the return address. The inspectors stated these were factors used in their decision to detain the package for further inspection.

Further, the Court stated that although these factors may be consistent with innocent activity, ruling out the possibility of innocent behavior does not vitiate reasonable suspicion and probable cause. In so stating, the Court stated as follows:

> Terriques suggests these factors are consistent with innocent activity; he does concede, however, the combination of these factors may give rise to reasonable suspicion when observed by experienced officers. . .
>
> The determination of reasonable suspicion does not require that we "rule out the possibility of innocent conduct." United States v. Arvizu, 534 U.S. 266, 276, 122 S.Ct. 744, 753, 151 L.Ed.2d 740 (2002). We view the totality of the circumstances, some of which may seem innocent in isolation. Here, the government has demonstrated both Popp and Randle are trained drug interdiction inspectors; the inspectors articulated the profile characteristics they used to assess the package for detention, and those characteristics were based on their experience. They stated their observation of the heavily taped seams on the package as well as the credible observations Leon made about the return address. These factors combined gave rise to reasonable suspicion the package contained contraband. . .

7

> This court has repeatedly reasoned heavy taping is one of the several factors which, when found in combination, may give rise to a reasonable suspicion to detain a package.

319 F.3d 1051, 1057, 1058.

Given the above, the undersigned concludes that there was reasonable suspicion to detain the package and more than ample probable cause to search it. In the case now at bar as in Terriques, supra, the Postal Inspectors had several factors which led to the suspicion that the item was possibly narcotics. These included the handwritten address; the return address not containing the name of any individual; being sent from a premises which had not sent the package; the fact that the item was heavily taped; the fact that the item was mailed from a Mail Boxes, Etc., which in the agents experience was often used to mask the true recipient or sender of the package, and the fact that it was sent from a "source" area of narcotics. All of the above as in Terriques, supra, gave the agent reasonable suspicion to detain the package. Further, once the narcotic canine alerted on the package, along with all of the above factors, there was ample probable cause to search the package.

In United States v. Bloomfield, 40 F.3d 910, 914 (8th Cir. 1995), the Court stated: "A dog's identification of drugs in luggage in a car provides probable cause that drugs are present." 40 F.3d 910, 919. Thus, the undersigned concludes that the warrant to search the package was based on probable cause and was lawful.

## Conclusion

Therefore, the Defendant's motion to suppress should be denied.

* * *

In accordance with the Memorandum above,

**IT IS HEREBY ORDERED** that the Request and Motion for Disclosure of Expert Testimony [#132], and Motion for Notice of Intent to Use and Description of 404(b) Evidence [#134] be **granted**.

**IT IS FURTHER ORDERED** that Motion of Defendant for Disclosure of Impeaching Information [Doc. #133] be **granted in part and denied in part**.

Finally,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Physical Evidence [#135] be **denied**.

Further, as to the motion to suppress, the parties are advised that they have until December 7, 2007, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

                                               /s/ Terry I. Adelman  
                                             UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of November, 2007.