# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:01-CR-385 CAS |
| ) | |
| WILLIAM CARR, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant William Carr's Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29(c). The government opposed the motion, defendant filed a reply, and the matter is ready for decision.

In September 2001, defendant William Carr and three co-defendants, Manuel Carr, Michael McGill and Heath Christian were charged with conspiracy to possess with the intent to distribute approximately ten (10) kilograms of cocaine, in violation of 21 U.S.C. § 846. After a trial by jury which commenced on January 14, 2008, William Carr was found guilty of conspiracy to possess with the intent to distribute approximately ten (10) kilograms of cocaine, in violation of 21 U.S.C. § 846. For the following reasons, the motion for judgment of acquittal will be denied.

**I. Facts**.

On December 8, 2000, United States Postal Inspector Bryan Witt was doing interdiction of drug packages at a United Parcel Service ("UPS") facility in Earth City, Missouri. Inspector Witt noticed a package addressed to "Loose Ends Barber Shop" because: (1) the package was shipped from Mail Boxes, Etc.; (2) the return address stated it was sent from a large hotel in California; (3) the sender did not list a name or a number; (4) the shipping cost was paid with cash as opposed to

an account; and (5) the package was heavily taped. Inspector Witt learned by further inquiry that: (6) the hotel manager said the package was not shipped from the hotel; and (7) a narcotics-trained canine alerted positive to the presence of narcotic odor on the package.

Inspector Witt obtained a search warrant, opened the package and discovered several bundles containing a total of approximately ten kilograms of cocaine. Most of the cocaine was removed and replaced with flour, and the parcel was repackaged. Inspector Witt obtained authorization for a beeper device, and arranged for a controlled delivery of the package to the Loose Ends Barber Shop. Agents set up surveillance on the front and back of the barber shop. St. Louis County Police Detective Gary Sodoma, dressed as a UPS delivery person, delivered the package with a recording device at 4:35 p.m. The owner of the barber shop, Mr. Hercules Lacy, signed for the package on behalf of Manuel Carr. A day or two prior to the delivery, Manuel Carr told Mr. Lacy that he had sent some clothes to St. Louis from out of town, asked Mr. Lacy to sign for the package, and Mr. Lacy agreed.

At approximately 5:10 p.m., co-defendant Michael McGill arrived in the parking lot of the Loose Ends Barber Shop driving a 2000 Mazda vehicle bearing license number 275 MLX, registered to Caroline Nelson at 10086 Prince Drive, St. Louis, Missouri 63136. Ms. Nelson is defendant Carr's mother. McGill entered the front door of the Loose Ends Barber Shop. Defendant Carr was already at the barber shop with his six-year-old son. Approximately five or ten minutes later, McGill and defendant Carr were observed leaving the barber shop by the rear exit. It was dark at the time, and the officers were thirty to forty feet away from the Mazda vehicle. Inspector Witt and two other officers, U.S. Postal Inspector Stephen Dowd and St. Louis County Police Sergeant Edward Vitt, testified that Carr carried the package containing the ten kilograms of cocaine. McGill and Carr

walked toward the 2000 Mazda, McGill opened the trunk lid and Carr put the package into the trunk and closed the trunk lid.

McGill then went to the driver's side and opened the door while Carr walked toward the rear passenger side of the vehicle. Postal Inspector Witt decided to effect the arrest before the car left. Inspector Witt alerted the rest of the surveillance team to effect the arrests of McGill and Carr. Defendant Carr was walking toward the area of the rear passenger door of the Mazda when Inspector Witt yelled "Police" and directed the men to put their hands where Witt could see them. Witt observed McGill immediately run toward the front of the Mazda. Inspectors Witt and Dowd observed defendant Carr immediately run to the rear entrance of the barber shop. Inspector Dowd chased Carr into the rear entrance of the shop while Inspector Witt arrested McGill outside in the parking lot.

Inspector Dowd testified that he followed defendant Carr into the rear entrance of the barber shop. Inspector Dowd entered the rear entrance of the barber shop and observed defendant Carr standing to the right in the hallway at the back of the shop. The officers told everyone in the barber shop to raise their hands. Sergeant Vitt was behind Inspector Witt and noticed a bulge in Carr's left hip area, shouted "gun," and Inspector Dowd then handcuffed defendant Carr. Sergeant Vitt removed a fully loaded Smith and Wesson 9mm pistol from Carr's person as well as a small quantity of marijuana. Defendant Carr identified himself as Isaac Jenkins and was in possession of a Missouri Department of Revenue ID card in the name of Isaac Jenkins which bore Carr's photograph. Later at the police station, defendant Carr identified himself as William Charles Carr at the formal booking process. Shortly after the arrest, Carr had a falling out with co-defendant Manuel Carr over money and went to California, where he remained until he was arrested by the U.S. Marshal in May 2007.

Mr. Lacy, the owner of Loose Ends Barber Shop, testified that he knew defendant Carr and his brother, Manuel Carr, "practically all his life" and that defendant Carr lived at 10086 Prince Avenue which was a mile or two away from the barber shop. Lacy was also familiar with co-defendants Michael McGill and Heath Christian. McGill had picked up another package for Manuel Carr two to three weeks before Manuel Carr asked Lacy to handle the delivery of this package on December 8, 2000. Lacy testified that the package was delivered by the UPS driver to the back of the barber shop, and that defendant Carr showed up at the barber shop an hour or so after the package was delivered. Lacy thought the package was "there all day." When McGill arrived, Lacy saw McGill pick up the package and leave through the back door followed by defendant William Carr.

Co-defendants Heath Christian, Michael McGill and Manuel Carr were indicted along with defendant Carr. The conspiracy in this case was proved through the investigation of Inspector Witt. Inspector Witt testified that:

(1) all of the defendants including defendant William Carr possessed state-issued identification from Missouri and Illinois that were sophisticated and authentic IDs from the Missouri Department of Revenue and the Illinois Secretary of State, which required other forms of identification to qualify for the IDs;

(2) other similar parcels were sent from St. Louis to various hotels in Hollywood, California, from November 20, 2000, through February 2001;

(3) other similar parcels were sent to various addresses in St. Louis, Missouri, from Hollywood, California, that contained fictitious senders' and receivers' names as well as addresses;

4

(4) co-defendants Heath Christian, Michael McGill and Manuel Carr were identified as having been in hotels in California and St. Louis near the time these packages were mailed and/or received. The fictitious IDs were used in both receiving the packages and registering at hotels where the packages were sent;

(5) the beeper number 800-871-5702 was used as a contact number on parcels sent during the conspiracy. The number belonged to a business owned by co-defendant Christian and was used by McGill on the night he was arrested trying to obtain the ten kilograms of cocaine from the Loose Ends Barber Shop;

(6) search warrants executed in September 2001 at the residences of Heath Christian, Manuel Carr and Michael McGill recovered (a) 3 handguns, (b) AK-47 ammunition, (c) other fake IDs of Manuel Carr and Michael McGill, and (d) drug notes of money amounts lost by the co-conspirators; and

(7) both Manuel Carr and defendant Carr referenced the Loose Ends Barber Shop as their place of employment and both claimed they were employed as barbers dating back to 1991. Neither of the Carrs were ever employed by Loose Ends Barber Shop nor were they ever licensed as barbers.

**II. Legal Standards**.

Under Rule 29(a) of the Federal Rules of Criminal Procedure, a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." United States v. Santana, No. 07-1172, __ F.3d __, 2008 WL 819075, *2 (8th Cir. Mar. 28, 2008) (quoting Fed. R. Crim. P. 29(a)). In deciding a motion for judgment of acquittal, a court must view the evidence in the light most favorable to the government, resolve conflicts in the government's favor, and accept all reasonable inferences that support the verdict. See id. A court should not weigh the

evidence or assess the credibility of witnesses.  United States v. Hernandez, 301 F.3d 886, 889 (8th Cir. 2002).  The standard is "very strict," Santana, 2008 WL 819075, *2, and a court may reverse the conviction only if it concludes that "no reasonable jury could have found the accused guilty beyond a reasonable doubt."  United States v. Beck, 496 F.3d 876, 879 (8th Cir. 2007).

"In a conspiracy case, the government must prove there was a conspiracy with an illegal purpose, that the defendant was aware of the conspiracy, and that he knowingly became a part of it." United States v. Fitz, 317 F.3d 878, 881 (8th Cir. 2003) (cited cases omitted).  There must be evidence the defendant entered into an agreement with at least one other person, and that the agreement had as its objective a violation of law.  United States v. Robinson, 217 F.3d 560, 564 (8th Cir.), cert. denied, 531 U.S. 999 (2000).  "It is not necessary to prove an overt act in furtherance of a conspiracy.  The conspiracy may be proved through circumstantial evidence and may be implied by the surrounding circumstances or by inference from the actions of the parties." Fitz, 317 F.3d at 881 (citing United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995)).  "Once the government establishes the existence of a drug conspiracy, only slight evidence linking the defendant to the conspiracy is required to prove the defendant's involvement and support the conviction." United States v. Beckman, 222 F.3d 512, 521 (8th Cir. 2000) (quoting United States v. Mosby, 177 F.3d 1067, 1069 (8th Cir. 1999), cert. denied, 528 U.S. 1196 (2000)).

**III. Discussion**.

With the foregoing background, the Court now discusses the evidence and the reasons why it concludes there was sufficient evidence to establish Carr's guilt on the charge of conspiracy to possess with the intent to distribute approximately ten kilograms of cocaine.

Although the government put forth substantial evidence of a conspiracy in this case, the evidence to establish Carr's knowing participation in the conspiracy is weak. The Court stated on the record that it was bothered by the result in this case. It is well established that "a defendant's mere presence, coupled with knowledge that someone else who intends to sell drugs is present, is insufficient to establish membership in the conspiracy." Fitz, 317 F.3d at 882 (cited case omitted). Further, "Mere physical proximity to contraband is insufficient to convict a person of possession with intent to distribute." United States v. Scofield, 433 F.3d 580, 586 (8th Cir. 2006) (quoted case omitted).

The Court notes that the government did not offer any co-conspirator testimony against Carr. Further, the government did not have any evidence linking Carr to prior shipments of cocaine from California, as it did with respect to the three co-defendants. In addition, and most disturbing, while three officers testified that they observed Carr carry the package containing cocaine and place it in the trunk of the vehicle, the testimony was that it was dark and the officers were thirty to forty feet away. Inspector Witt testified that in the official report of the arrests that he prepared some seven years prior to the trial, he wrote that "they" carried the package to the vehicle, not that Carr carried the package, and Witt wrote that the "two suspects" placed the package in the vehicle, not that Carr placed the package in the trunk. See Transcript, Vol. II at 154-56. Carr's handling of the package

was a very significant fact with respect to his knowledge of a conspiracy to possess with the intent to distribute cocaine.

Nonetheless, applying the principles outlined above and reviewing the evidence in the light most favorable to the verdict, the evidence in the record which can be said to support a reasonable inference that Carr knowingly participated in the conspiracy is as follows: (1) Carr came to the barber shop on the day a package arrived containing ten kilograms of cocaine sent from California by his brother Manuel, (2) within approximately 35 minutes of Carr's arrival at the barber shop, co-defendant McGill arrived to pick up the package, driving Carr's mother's car, (3) after Carr placed the package containing cocaine in the trunk of his mother's car, an officer identified himself as "police" and ordered the men to put their hands in view, and Carr immediately ran back into the barber shop, (4) Carr was in possession of a loaded 9mm weapon and a small quantity of marijuana, (5) Carr and McGill gave false names to the arresting officers, (6) at the time of their arrests, Carr and McGill had authentic Missouri non-driver's license identification cards bearing their photographs and the false names, which were similar to authentic Missouri and Illinois identification cards bearing false names possessed by the other co-defendants, (7) Carr falsely stated on three occasions in 1991, 1993 and 1995 that he was employed as a barber at the Loose Ends Barber Shop, as did his brother, co-defendant Manuel Carr, when applying for a lease in 1997, and (8) Carr traveled from Missouri to California shortly after his arrest in December 2000, following an argument with his brother Manuel over money.

Based on this evidence, the jury's verdict did not rest on Carr's mere presence, but rather on his presence under the particular set of circumstances described above. The evidence, particularly that Carr handled the package containing cocaine, possessed a weapon, fled from police, gave police

8

a false name, and possessed an authentic state-issued identification card in a false name similar to identification cards in false names held by the co-defendants, is sufficient to support a reasonable inference that Carr knowingly participating in the conspiracy to possess with the intent to distribute in excess of ten kilograms of cocaine.

The quantity and quality of the evidence described above distinguishes this case from the cases relied on by Carr in his motion for judgment of acquittal, United States v. Pace, 922 F.2d 451 (8th Cir. 1990), United States v. Hernandez, 301 F.3d 886 (8th Cir. 2002), and Scofield, 433 F.3d 580, in which there was insufficient evidence for a jury to reasonably infer that the defendant knowingly participated in a drug conspiracy. The quantity and quality of the evidence against the defendant in this case was stronger than the evidence in each of those cases.

For the foregoing reasons, the defendant's motion for a judgment of acquittal should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant William Carr's Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29(c) is **DENIED**. [Doc. 157]

                                                   **CHARLES A. SHAW**
                                                   **UNITED STATES DISTRICT JUDGE**

Dated this  2nd  day of April, 2008.